(Decided 13th March, 1894.)

---

SAMUEL POSNER *vs.* JAMES H. BAY, and others.

*Vendor and Purchaser—Decree against Purchaser for Specific performance— Costs—Interest—Ground rent.*

Where property is sold, "subject to the annual rent of $240, for the sum of $24,000 cash, title to be marketable and free from incum_ brances, adjustment of expenses to be made as of January 1st, 1893," and the purchaser declines to take the property deeming the title defective and unmarketable, he will, in case the Appellate

Court, in an action by the vendor for specific performance of the contract of sale, holds the title marketable, be required to pay the costs of such action, the ground rent as specified, and interest on the purchase money from the time it should have been paid, the 1st of January, 1893.

Where the vendee of property declines to take the same on the ground that the title is defective, and the vendor brings an action for the specific performance of the contract of sale to determine whether his title is defective and unmarketable, and the title is declared to be good, the vendee is not prejudiced because the decree requires him to pay the purchase money "less the amount of debts and charges, including mortgages and other liens properly chargeable against said property, as of" the date when the purchase money was payable, with interest from such date.

· APPEAL from the Circuit Court of Baltimore City.

This appeal was taken from a decree signed by WRIGHT, J., requiring the defendant to pay interest on the purchase money from the 1st of January, 1893, the date specified in the contract of sale, as also the taxes and ground rent, and the costs of the case. The case is stated in the opinion of this Court.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, PAGE, ROBERTS, McSHERRY, and BOYD, J.

*M. R. Walter*, for the appellant.

The decree from which this appeal was taken was erroneous. The appellant under the circumstances of this case, ought not to be required to pay the interest, ground rent, and taxes, except from the time this Court holds that the title is good, nor ought he to pay the costs of the case. The interest, taxes and ground rent since 1st of January, 1893, alone amount now to about $1,900, and he ought not to be compelled to suffer this loss. If a purchaser is compelled to accept a title acquired by the vendor and her predecessors by adversary possession, he ought, at least, not to be required to pay

any of the charges on the property, until the title is established by the Court's decree, nor the costs of the case, for practically the vendor is not in a position to convey a good title until the title is so held by the Court to be good. If the vendor has not a title of record, the purchaser ought not to be required to pay the charges on the property and interest on the purchase money, while his title is being established, and it is but equitable and fair that the vendor should put on record the proof that he has a good title when there is no evidence of record. It is, furthermore, but fair that the Court costs of furnishing the record proof of title should be thrown upon the vendor, and not upon the purchaser.

The decree was erroneous in two other particulars. It makes the appellant pay interest on the purchase money after the appellee has tendered the deed, although the appellant may refuse payment on the ground that the mortgages and other liens have not been released— and that therefore the tender is not a good one, or because the parties may be "unable to agree upon the amount of debts and charges properly chargeable against said property as of January 1, 1893."

Secondly. It does not require the appellee to make a conveyance of the property free of all mortgages and other incumbrances. The appellant is compelled upon the tender of a deed to pay the purchase money less the mortgages and other liens. In other words, according to the terms of the decree the purchaser must have the liens released himself, and that too at his own cost.

*Alfred S. Niles,* (with whom was *Oscar Wolff,* on the brief,) for the appellee.

BOYD, J., delivered the opinion of the Court.

This case is before this Court for the second time. At the last April Term an appeal from a *pro forma* decree in favor of the present appellant was heard and decided

Posner *vs.* Bay, *et al.*

against him. *Bay, et al. vs. Posner*, 78 *Md.*, 42. The several objections to the title to the property in controversy were held by this Court to be untenable, and the title determined to be marketable, and free from the objections urged. A motion for a re-hearing was made by Mr. Posner which was recently overruled. (78 *Md.*, 52.) James H. Bay, attorney in fact of Virginia B. Hynson, sold the property to Samuel Posner, "subject to the annual rent of $240.00, for the sum of $24,000.00 cash, title to be marketable and free from encumbrances; adjustment of expenses to be made as of January 1st, 1893."

On April 1st, 1893, James H. Bay, attorney, and Virginia B. Hynson, filed a bill for specific performance against Posner, in which they set out a contract, allege their readiness, and offer to convey the property in conformity with its terms, and his refusal to comply with the obligation assumed by him under said contract, although often requested to do so.

On the same day Posner filed his answer admitting the contract, but claiming that the title of Virginia B. Hynson to the property was defective and unmarketable. The answer then sets out the particulars in which the title is alleged to be defective. Testimony was promptly taken, and a *pro forma* decree was passed overruling one objection urged, and sustaining the others.

An appeal was entered by the plaintiffs the same day, and the record transmitted to this Court in time for the April Term.

As already stated, by our decision in the case of *James H. Bay, and others vs. Samuel Posner*, above referred to, all of the objections brought to our notice were held to be unwarranted, and the title to the property declared to be good. The vendee was therefore bound by the contract, and was under obligation to comply with its provisions. By its explicit terms the adjustment was

3          v. 79.

to be made as of January 1st, 1893. The purchase money was due and payable then, and, as a consequence, the vendor is entitled to interest from that date. Her title having been declared to be good and marketable, she is entitled to a compliance with the terms of the contract. It would be inequitable, and contrary to the plain meaning of the contract, to withhold from her the interest on the purchase money from the time it should have been paid. The vendee doubtless felt justified in having the title passed upon by the Court, but it was at the risk of his being compelled to pay the interest from the first day of January, as well as the costs, if he failed to sustain his position. Of course, the vendee is also liable, from what we have said, for the ground rent of $240 per annum from January 1st, 1893. The record discloses no sufficient reason for requiring the vendor to pay the costs. The contract did not provide for submitting the validity of her title to the Court, but it simply required her to furnish a marketable title—not one to be declared to be marketable by the Court at her expense. It would be a dangerous practice to require vendors, under the circumstances of this case, to pay the costs, as vendees might prefer in all important transactions, to have judicial determinations of the validity of titles, if they are to be made at the expense of the vendors.

Objection is also made to the decree because the appellant is required to pay the purchase money, "less the amount of debts and charges, including mortgages and other liens properly chargeable against said property, as of January 1st, 1893, with interest from the said first day of January, A. D., 1893." The record does not disclose any mortgage or other lien against the property, excepting the annual rent of $240, to which the sale is made subject by the contract. Nor does the vendee object in the original case to the payment of the pur-

Posner *vs.* Bay, *et al.*

chase money on account of any such liens. But if there are any, this provision in the decree cannot injure the appellant. He will be entitled to deduct from the purchase money the amount of such liens, including the necessary costs of releasing the same, as they would be "properly chargeable against said property." When property that is to be conveyed free from encumbrances has liens on it when sold, it is usual to pay them out of the purchase money, and the purchaser for his own protection sees that it is done. The deed for the property and releases of liens are usually delivered simultaneously or in such way as to protect the purchaser. There is no intimation in the record that there are any liens which are not due or cannot be paid off, and we do not see how the appellant can possibly be injured by this provision in the decree, but, as there may be some ground rent or other charge to be adjusted, it may have been necessary for his protection.

"In the event of the parties being unable to agree upon the amount of debts and charges properly chargeable against said property as of January 1st, 1893," the decree provides for their being ascertained, and reserves the right to the Court to dispose of the costs in thus ascertaining them. If such reference as is provided for in the decree becomes necessary, the Court below will doubtless make such order as to the costs as it deems equitable. There can be no valid objection to the decree, under the views expressed above, and it will be affirmed.

*Decree affirmed, with costs.*

(Decided 13th March, 1894.)